ORIGINAL 012602-42

| State of Alabama Unified Judicial System | SUMMONS | Case Number |
|---|---|---|
| Form C-34   Rev 6/88 | - CIVIL - | CV-10-942 |

IN THE _____ CIRCUIT _____ COURT OF _____ MOBILE _____ COUNTY

**Plaintiff** WILLA VASSAR **v. Defendant** GULFBELT PROPERTIES INC ET AL

RECEIVED

JUN 07 2010

BALDWIN CO. SHERIFF'S

NOTICE TO _____ John Napper 31615 Tara Blvd. West Spanish Fort, AL 36527

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED TO YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _____ ISHMAEL JAFFREE C _____ WHOSE

ADDRESS IS _____ 758 ST. MICHAEL ST. STE 908 MOBILE ALABAMA 36602   251-694-9090

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _____ 30 _____ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☒ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of WILLA VASSAR pursuant to the Alabama Rules of Civil Procedure.

Date _JUN 3 0 2010_   _JoJo Schwarzauer_   JoJo Schwarzauer, Circuit Clerk
Clerk/Register   MOBILE COUNTY CIVIL DIVISION
Mobile Government Plaza, Room C936
205 Government Street
Mobile, Alabama 36644-2936

☐ Certified Mail is hereby requested.

_____
Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____ (Date)

☒ I certify that I personally delivered a copy of the Summons and Complaint to _____ in _____ County,
_Mary Shumach_ _Baldwin_
Alabama on _7/15/10_
(Date)

Date _7/15/10_   _Ronald Thoat_
Address of Server _3 0 Hand Ave_   Server's Signature
_Bay M. eH, AL_   _Deputy_
Type of Process Server

EXHIBIT
A

1335   Grand mother

THE STATE OF ALABAMA )
MOBILE COUNTY )

012603-42

# ORIGINAL

## NOTICE OF DISCOVERY

WILLA VASSAR

Vs.

GULFBELT PROPERTIES INC, ETAL

CASE NO. ___-CV-19-942___

SERVICE BY:

**RECEIVED**

| | CERTIFIED MAIL | JUL 07 2010 |
| x | SHERIFF | |
| | PROCESS SERVER | BALDWIN CO. SHERIFF'S CIVIL DIVISION |

TO: JOHN NAPPER
31615 TARA BLVD WEST
SPANISH FORT, AL 63527

PLEASE TAKE NOTE, THAT IN THE FOLLOWING STATED CAUSE PENDING IN OUR CIRCUIT COURT OF MOBILE COUNTY ___ISHMAEL JAFFREE C___ ESQ. HAS FILED

WRITTEN DISCOVERY REQUESTS

THE DEFENDANT IS REQUIRED TO RESPOND TO THE ABOVE LISTED DISCOVERY WITHIN 45 DAYS AFTER SERVICE OF THIS NOTICE

WITNESS: JOJO SCHWARZAUER, CLERK, THIS ___30th___ DAY OF ___June 2010___

Paper Served To _John Napper_
on Date _7-19-10 @ 1300_
_Ry Bion_ D.S.

_JoJo Schwarzauer_
JOJO SCHWARZAUER, CIRCUIT CLERK
MOBILE COUNTY CIVIL DIVISION
MOBILE GOVERNMENT PLAZA C-936
205 GOVERNMENT STREET
MOBILE, AL 36644-2936

X _Mary Shmock_ _Mary Shmock - Germo Mother_

# IN THE CIRCUIT COURT OF MOBILE COUNTY , ALABAMA

| | |
|---|---|
| WILLA VASSAR, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. CN-10-0942 |
| | ) **JURY TRIAL DEMANDED** |
| GULFBELT PROPERTIES INC, | ) |
| GORDON KNAPPER, (owner of | ) |
| Gulfbelt Properties); JOHN | ) |
| NAPPER, (President of Gulfbelt | ) |
| Properties); SUMMERVILLE COURT | ) |
| CONDOMINIUM ASSOCIATION; | ) |
| and, MIDTOWN PROPERTIES LLC | ) |
| (Owner of Summerville Court | ) |
| Condominium Association) | ) |
| | ) |
| **Defendants.** | |

## COMPLAINT

**1.** The Plaintiff, Willa Vassar, is an adult citizen of the State of Alabama, and a resident of Mobile County.

**2.** Defendant, Gulfbelt Properties, is an Alabama corporation licensed to do business throughout the state of Alabama including Mobile County Alabama. This defendant is the owner, or manager, of the rental residence where the Plaintiff resided during all events relative to this Complaint.

**3.** Defendant, Gordon K Napper, is the sole listed owner and incorporator of Gulfbelt Properties, and has permitted his brother, John Napper to portray himself as the President of Gulfbelt Properties. This defendant is sued in both his official and individual capacities since upon information and belief the corporate structure is merely a sham to shield

1

this defendant from individual liability. This defendant is the owner, or manager, of the rental residence where the Plaintiff resided during all events relative to this Complaint.

**4.**     Defendant, John Napper is portrayed as the president of Gulfbelt Properties. This defendant was at all times relevant the person who first contacted the Plaintiff, and the person, who by his acts, denied Plaintiff rights to reside in a habitable and safe premises free from invidious racial discrimination. This defendant is sued in his individual capacity. This defendant is the owner, or manager, of the rental residence where the Plaintiff resided during all events relative to this Complaint.

**5.**     Defendant, Summerville Court Condominium Association Inc, is an Alabama corporation, formally licensed to do business throughout the state of Alabama, including Mobile County Alabama; however, records available with the Alabama Secretary of State do not confirm that this corporation is currently listed to do business in this state. This defendant is the owner, or manager, of the rental residence where the Plaintiff resided during all events relative to this Complaint.

**6.**     Defendant, Midtown Properties LLC, is the sole owner of Defendant Summerville Court Condominium Association Inc and is an Alabama corporation. A search of the corporate records with the Secretary of State, Alabama does not reveal that this defendant (Midtown) is currently licensed to do business in this state. This defendant is the owner or manager of the rental residence where the Plaintiff resided during all events relative to this Complaint.

**7.**    On or about December 23 or 24, 2008  Plaintiff, a 66 year old female resident of property owned, managed or supervised by the defendants, while traversing down steep winding second floor steps adjacent to the back door of her apartment, slipped on slick steps .

**8.**     Prior to her slip and fall, the defendants were aware that the back steps to Plaintiff's apartment unit did not have any slip retardant substances.

**9.**     Prior to her slip and fall, defendants were aware that the back steps to Plaintiff's apartment unit did not have any guard rails, or banisters, which could reduce the likelihood of falls in the first instance, and provide a means by which a victim could grab hold and reduce the effects of a fall in progress.

**10.** Each of the defendants owed a duty to the Plaintiff to maintain the back steps of her apartment unit in a safe and clean manner. These defendants had knowledge, actual and/or constructive, of the dangerous conditions that existed with respect to these steps and failed to remedy same, including, but not limited to, placing slip preventing substances on the steps, or otherwise applying materials which would make slips less likely.

**11.** Each of the defendants owed a duty to the Plaintiff to maintain the back steps of her apartment unit in a safe and secure condition These Defendants had knowledge, actual and/or constructive, of the dangerous conditions that existed with respect to the lack of any rails, or banisters, on the rear steps to Plaintiff's apartment, and they failed to remedy same, including but not limited to placing guard rails on the back steps which would make slip and falls less likely.

**12.** It was only after Plaintiff's slip and fall and her injury resulting there from and upon the demand of Mobile Alabama's Urban Development Department did the defendants apply non-slip tape and non-slip paint to the Plaintiff's back stairs.

**13.** It was only after Plaintiff's slip and fall and her injury resulting there from and upon the demand of Mobile Alabama's Urban Development Department did the defendants install two (2) oak handrails for the rear steps to Plaintiff's apartment.

**14.** At all times relevant to Plaintiff's slip and fall on defendants' back steps, she was acting careful and prudent and without any negligence on her part which may have contributed to the resultant accident.

## COUNT I
### (Negligence: Personal Injury)

Plaintiff adopts and incorporates all of the facts and allegations set forth above as if fully set forth herein.

**15.** As a direct and proximate result of the aforementioned accident, which was caused by the collective negligence of the defendants, Plaintiff, who was at all times exercising due care, suffered severe pain and permanent injuries to her body including but not limited to : rib contusion (cracked ribs); a large rotator cuff tear on her left arm;

3

extreme pain both in her cervical and lumbar spine which has been determined by her physician as a level 8 on a scale of 10; moderately sever AC joint (acromioclavicular) on the top of her right shoulder; low back pain traversing all the way into her leg; cervical disc degeneration resulting in extreme pain; and, AVN (avascular necrosis) on right femur head which ultimately resulted in Plaintiff having to replace her right hip. All of these injuries have caused and will continue to cause her great pain and                                        mental                                        anguish.

**16.** That as a further direct and proximate result of the aforesaid negligence of the defendants Plaintiff has been forced to expend and will continue to expend large sums of money for hospitalization, x-rays, doctors, nurses, medical treatment, and medicine for treatment of the aforesaid injuries.

**17.** Solely as a result of the injuries aforementioned, the Plaintiff has incurred damages, including: (a) medical expenses; (b) lost wages;( c) she has, may, and probably will for an indefinite time in the future suffer great pain, inconvenience, embarrassment, and mental anguish; (d) she has, may, and probably will for an indefinite time in the future be deprived of ordinary pleasures of life, loss of well-being, and equanimity; and (e) her overall health, strength, and vitality has been greatly impaired.

**WHEREFORE,** the Plaintiff, Willa Vassar, demands judgment against the Defendants in the amount of Nine Hundred and Fifty ($950,000.00) for damages, together with the costs of this action, and such other relief as is deemed just and proper.

## COUNT II
### (Negligence: Property Damage)

**18.** Defendants, at their Upham Street Condominium properties, maintain an automatic electronic gate which requires the input of a certain code in order for the gate to open and permit entry unto the common grounds of the complex.

**19.** In order to gain entry onto and to exit her residential unit the Plaintiff must travel through the above referenced automatic gate.

**20.** On or about March 10, 2009 Defendants' automatic gate, situated on their Upham Street properties, improperly closed upon a vehicle owned

4

occupied and driven by the Plaintiff, causing damage in the amount of $1,600.00 to Plaintiff's vehicle.

**21.** The gate, which damaged Plaintiff's motor vehicle, has a history of closing too quickly and closing on residents' vehicles. The defendants knew or reasonably should have known of this history.

**22.** Despite knowledge by the defendants' that this gate occasionally prematurely closed before a tenant could completely navigate the gate passage area, they failed to take any corrective steps.

**23.** Technology exist which will prevent an automatic gate from closing as long a vehicle had not sufficiently cleared the gate's passageway. Defendants' knew or reasonably should have known of this technology.

**24.** Each of the defendants owed a duty to the Plaintiff to maintain an entry gate which would not close upon and damage her vehicle before she had cleared the gate path. These defendants breached this duty by failing to maintain such a gate thereby causing Plaintiff's injury.

**25.** As a direct and proximate result of the aforementioned preventable negligence, the Plaintiff has suffered injury as described above.

**WHEREFORE,** the Plaintiff, Willa Vassar, demands judgment against the Defendants on this count in the amount of One Thousand Six Hundred ($1,600.00) for damages, together with the costs of this action and such other relief as is deemed just and proper.

## <u>COUNT III</u>
### (Fair Housing Act Race Discrimination

**26.** This count is brought to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("Fair Housing Act"), 42 U.S.C. §§ 3601 *et seq.*

**27.** The defendants maintain residential rental units in the city of Mobile Alabama. One such residential unit known as Summerville Court Condominium, where Plaintiff (an African-American senior citizen) resides consist of both privately owned condominiums and rental apartment consisting of pods of four units each, two downstairs and two upstairs. Plaintiff lived in the upstairs of one of these pods.

5

**28.** For a period of time, the apartment pod occupied by the Plaintiff was completely unoccupied except by the plaintiff. During this period the defendant refused to lock the doors or otherwise secure the unoccupied units in spite of Plaintiff's request, thereby placing her in constant fear of her safety. It was only after the intervention of third parties, all white individuals, did the defendants secure the unoccupied units.

**29.** During the entire period of the Plaintiff's occupancy, a period exceeding three years, her unit has only been sprayed once for roaches, bugs and other vermin. Yet her white neighbors, also tenants of the defendants have their unit sprayed each month.

**30.** The Plaintiff was informed by Defendant, John Napper, that the common laundry room had been closed never to reopen since many of the units had been converted to condominiums. Yet this defendant knew this not to be true since he had given a white resident a key so that she could use the laundry room which had been relocated. This caused the Plaintiff to travel off premises to attend to her laundry needs until she discovered the deception and demanded the right to use the laundry room.

**31.** Defendant John Napper delayed response, or refused to respond, to Plaintiff's maintenance request and frequently refused to take her calls. Yet when Plaintiff had a white neighbor called on her behalf, right after a refused call, Defendant Napper would take that call.

**32.** On September 9, 2009, following flood damage, Defendant, John Napper refused Plaintiff's request to make repairs and only did so after a white neighbor intervened on her behalf.

**33.** In another incident the Plaintiff complained to Defendant, John Napper about wasp on the walls and requested that he wash the walls down. He refused. However, when a neighboring white tenant requested that he remove the wasp he did so immediately.

**34.** When Defendant Summerville Court Condominium Association had its Clubhouse opening all of the complex white residents were formally invited, no such invite was extended to the Plaintiff.

**35.** The Plaintiff is only one of a few minorities residing at defendants' residential complex. The statistical disparities are significant and support

an inference that these defendants are hostile to the inclusion of minorities among their housing population.

**36.** By the conduct described in the foregoing paragraphs, defendants by and through their agents discriminated in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, in violation of 42 U.S.C. § 3604(b).

**37.** The Plaintiff is an aggrieved person, as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of defendants' conduct described above.

**WHEREFORE,** the Plaintiff prays that the court enter an ORDER that:

**A.** Declares that defendants' policies and practices, as alleged herein, violate the Fair Housing Act;

**B.** Enjoins defendants and all other persons in active concert or participation with any of them, from: discriminating against the Plaintiff in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of her race;

**C.** Award monetary damages, pursuant to 42 U.S.C. § 3612(o) (3), to the Plaintiff;

**D.** Award Plaintiff's actual and punitive damages pursuant to 42 U.S.C. § 3613 (c) (1)

**E.** Award Plaintiff reasonable attorney fees pursuant to 42 U.S.C. § 3613 (c) (2); and

**F.** Award such other and further and other relief as the Court deems just and proper.

## COUNT IV
### (Fair Housing Act: Reasonable Accommodation)

**38.** As stated in paragraph 7, above, on or about December 23 or 24, 2008 the Plaintiff suffered severe injuries resulting from a fall. Shortly after this fall and continuously thereafter she requested of defendants that they permit her to transfer to a downstairs apartment since the combination of her age and disability resulting from the accident made it tremendously difficult for her to navigate the stairs leading up to her upstairs apartment.

**39.** Notwithstanding Plaintiff's plea the defendants steadfastly refused to permit her a reasonable accommodation to maintain safe and meaningful enjoyment of the premises.

**40.** It was only after being contact by HUD and after notice in April 2010 to the Plaintiff that her lease was being terminated did the defendants agree that they had available downstairs units. This was a year and three months after the Plaintiff's accident.

**41.** By the conduct described in the foregoing paragraphs with respect to this count, Defendants by and through their agents discriminated by failing to make a timely reasonable accommodation to the Plaintiff in violation of 42 U.S.C. § 3604 (B) which required the defendants to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling"

**42.** The Plaintiff is an aggrieved person, as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' conduct described above.

**WHEREFORE,** the Plaintiff prays that the court enter an ORDER that:

**A.** Declares that defendants' policies and practices, as alleged herein, violate the Fair Housing Act;

**B.** Enjoins defendants and all other persons in active concert or participation with any of them, from: denying Plaintiff reasonable accommodations in rules, policies, practices, or services, when such

8

accommodations may be necessary to afford her an equal opportunity to use and enjoy a dwelling discriminating in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith;

**C.**     Award monetary damages, pursuant to 42 U.S.C. § 3612(o) (3), to the Plaintiff;

**D.**     Award Plaintiff's actual and punitive damages pursuant to 42 U.S.C. § 3613 (c) (1)

**E.**     Award Plaintiff reasonable attorney fees pursuant to 42 U.S.C. § 3613 (c) (2); and

**F.**     Award such other and further and other relief as the Court deems just and proper.

## COUNT V
### (Breach of Alabama's Warranty of Habitability)

**43.**     Defendants have generally violated Ala Code § 35-9A-204(2) which require the landlord to "make all repairs and do whatever is necessary to put and keep the premises in a habitable condition" in the following particulars:

> **(a).** During the course of three and one half years the defendants has failed or otherwise refused to repair the Plaintiff's air conditioner leaving her to live with oppressive heat during the summer months;
> **(b).** The defendants has failed or refused to repair Plaintiff's defective water heater until instructed to do so by Mobile's Urban Development Department;
> **(c).** Defendants have permitted a shorted electrical outlet to remain unrepaired despite being requested by the Plaintiff that repairs be made;
> **(d).** Defendants have delayed repair a leak of Plaintiff's bath tub until ordered to do so by Mobile's Urban Development Department;
> **(e).** Defendants refused to correct water damage to Plaintiffs carped due to the overflow of a leaking drainage pipe until requested to do so by one of Plaintiff's white neighbors;

9

**(f).** Defendants delayed to repair holes in a door securing Plaintiff's unit until ordered to do so by Mobile's Urban Development Department'

**(g).** Plaintiff's closet door has remained in an unrepaired state since late May, being attached only by one hinge; and,

**(h).** Defendants have permitted the building which Plaintiff occupies to remain vacant and unsecure (easy entry in the unoccupied units thereby placing Plaintiff in fear of her safety) until warned by Mobile's Urban Development Department.

**44.** Specifically, the defendants have violated section 4. of the above referenced section, which requires landlords to: "maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord"?

**45.** For the defendants' willful, or negligent, failure or refusal to provide the above referenced "essential" services Ala Code § 35-9A-404(2) permits the Plaintiff to recover, as damages, the "diminution in the fair rental value of the dwelling unit".

**WHEREFORE,** the Plaintiff prays that the court enter an ORDER that:

**A.** Award the Plaintiff as compensatory damages an amount to be determined by the Court, or sitting jury, which represents the cumulative diminished rental value of her residential unit'

**B.** Award all civil penalties;

**C.** Award her attorney fees as provided by Ala Code § 401(b); and

**D.** Grant such other and further relief as the Court deems just and proper.

STATE OF ALA. MOBILE CO.
I HEREBY CERTIFY THIS
TO BE A TRUE FILED IN

2010 JUN 30 AM 11: 27

CLERK CIRCUIT COURT

ISHMAEL JAFFREE (JAF 002)
758 St Michael St. Ste 808
Mobile Alabama 36602
251-694-9090 ishjaff@gmail.com

10

Defendant,
Summerville Court Condominium
Can be served by serving its Registered Agent,
Bruce T. McGowin at 3000 AmSouth Bank Bldg.
107 St. Francis Street, Mobile Alabama 36602

Defendant,
Midtown Properties LLC
Can be served by serving its Registered Agent,
Bruce T. McGowin at 3000 AmSouth Bank Bldg.
107 St. Francis Street, Mobile Alabama 36602


Defendant,
Gulfbelt Properties Inc
Can be served by serving
Gordon K. N Napper
31615 Tara Blvd. West
Spanish Fort Alabama 36527

Defendant,
Gordon K. N Napper
31615 Tara Blvd. West
Spanish Fort Alabama 36527

Defendant,
John Napper
31615 Tara Blvd. West
Spanish Fort Alabama 36527

# IN THE CIRCUIT COURT OF MOBILE, ALABAMA

WILLA VASSAR,                              )
                                          )
                Plaintiff,                 )
                                          )
        v.                                 ) Civil Action No. _CV-10-942_
                                          ) **JURY TRIAL DEMANDED**
GULFBELT PROPERTIES INC,                   )
GORDON KNAPPER, (owner of                  )
Gulfbelt Properties) ; JOHN                )
NAPPER, (President of Gulfbelt             )
Properties): SUMMERVILLE COURT)
CONDOMINIUM ASSOCIATION;                   )
and, MIDTOWN PROPERTIES LLC                )
(Owner of Summerville Court                )
Condominium Association                    )
                                          )
                Defendants.                )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

     Pursuant to Ala. R. Civ. P. 33, Plaintiff hereby submits the following Interrogatories to Defendants. Plaintiff requests that defendants, or their counsel, serve their answers, in writing and under oath, to the undersigned counsel for Plaintiff at **758 St. Michael Street Suite 908 Mobile Alabama 36602**, within **45 days** of service of these Interrogatories.

     For the purpose of these Interrogatories only, Plaintiff has used the definitions set forth below:

### I.   Definitions

As used in this discovery.

1

**1.** "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

**2.** "Any" means one or more, and if more than one, then identify and/or produce all such that apply and not just any one of several.

**3.** "Communication" means any disclosure, transfer, or exchange of information or opinion, however made.

**4.** The phrase "describe in detail" as used in these interrogatories includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific interrogatory.

**5.** "Document" means any written, recorded, or graphic material of any kind, whether prepared by defendants or any one of them or by any other person who acts on their behalf or who is otherwise under their control. The term includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not that resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

Without limitation on the term "control" as used in the preceding paragraph, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person.

**6.** "Identify" or "identity" means to state or a statement of:

    **a.** in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

    **b.** in the case of a natural person, his or her name, business address and telephone number, employer, and title or position;

    **c.** in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person when it was made, and the subject matter discussed;

    **d.** in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

    **e.** in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

**7.** "Including" means including, but not limited to.

**8.** "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

**9** "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying,

3

commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

**10.** "Relevant time period" means the time period stated in paragraph 1 of the Instructions.

**11.** "Year" means calendar year or the twelve-month period on which your business records are based; if the latter is used in responding to a interrogatory, specify the twelve month period used.

**12.** "You," "your" or "your company" mean the defendants in this action or any one of them according to the plain meaning of the question.

**13.** The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

## II. **Instructions**

**1.** Unless otherwise specified, these interrogatories are limited to the time period from the onset of Plaintiff's lease with the defendants and/or their predecessor-in-interest beginning in 2006 up to and including the date that these interrogatories are being finally answered by the defendants.

**2.** Where knowledge, information, or documents are requested, such request encompasses knowledge, information or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

**3.** Each interrogatory is to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete does not excuse failure to answer each interrogatory as fully as possible. The omission of any name, fact, or other item of information from an answer shall be deemed a representation that such name, fact, or other item is not known to defendant, their agents, counsel, or other

4

representatives at the time the answers to these Interrogatories are served upon defendants.

**4.** For each and every answer to these Interrogatories:

>**a.** Identify each and every person who participated in supplying information and/or drafting your response or any part thereof;

>**b.** If the answer to any of these Interrogatories was made by referring to or reviewing any documents, identify each and every document referred to or reviewed and the Interrogatory or Interrogatories in connection with which they were used.

**5.** As used in these Interrogatories the singular shall be deemed to include the plural, the plural to include the singular, and words in the masculine, feminine, or neuter shall include each of the other genders as necessary to make the Interrogatory inclusive rather than exclusive.

**6.** Where an Interrogatory contains a general question or questions, followed by a specific question or questions, the specific question or questions are to be read and interpreted as requesting additional information, not as limiting the general question or questions.

**7.** Pursuant to Ala. R. Civ. P. 26(e), you are under a duty seasonably to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

**8.** For any interrogatory or part of an interrogatory which you refuse to answer under a claim of privilege, submit a sworn or certified statement from your counsel or one of your employees in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

**9.** Answer each interrogatory fully. If you object to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If you are unable to answer an interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and identify or describe all other sources of more complete or accurate information.

5

**10.** For any record or document responsive or relating to these interrogatories which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

## III.  <u>Interrogatories</u>

**1.** Provide the names, and if not a listed defendant, then the addresses and telephone numbers of all persons answering and/ or assisting in answering these interrogatories and   identify, by number, which interrogatory each person so identified is answering.

**RESPONSE:**

**2.** With respect to each named defendant,   identify, with specificity, its/his complete role in the operation of and/or management   the condominium/apartment complex, known as Summerville Court Condominiums,   where Plaintiff resided   during the time that she initially filed the Complaint which  is the subject of this action.

**RESPONSE:**

**3.** With respect to your response to interrogatory number 2, above, identify (with enough specificity to permit the Plaintiff to prepare a well drafted request for production) each document which support your response(s) to this interrogatory.

**RESPONSE:**

**4.** With respect to each defendant identify the full extent of its ownership and/or management interest in Plaintiff's residence situated at 214 Upham Street, Unit 20 D, Mobile Alabama 36607.

**RESPONSE:**

**5.** Identify, by date, (beginning with the onset of Plaintiff's residency in the apartment complex located at 214 Upham Street, Mobile, Alabama 36607, and ending on the date that the responses to these interrogatories are being forwarded to Plaintiff's counsel) each and every maintenance request made by the Plaintiff to the defendants and/or any one of them, corresponding repair of servicing of the maintenance request.

**RESPONSE:**

**6.** With respect to your response to interrogatory number 5, above, identify (with enough specificity to permit the Plaintiff to prepare a well drafted request for production) each document which support your response(s) to this interrogatory.

**RESPONSE:**

**7.** Identify by date and nature of the contact, each and every contact any of the defendants received from Mobile's Urban Development Department and/or any other agency of city or county government

concerning problems related to Plaintiff's residency with the defendants brought to the contacting department's/agency's attention by the Plaintiff, or by one acting on or for Plaintiff's behalf.

**RESPONSE:**

**8.** Identify the party who was responsible for maintaining (except the privately owned condominiums) the back steps, walkways and common areas of the Summerville Court Condominium.

**RESPONSE:**

**9.** Identify each employee, agent and/or servant or any other person with knowledge of the incidents identified in each of the counts of Plaintiff's Complaint and be specific as to which count the person(s) so identified have knowledge of. For each such individual, provide a summary of what knowledge the witness has.

**RESPONSE:**

**10.** Identify any individual of which you are aware that has knowledge of the facts and circumstances of this case, including but not limited to eyewitnesses, people claiming to be eyewitnesses and any individuals who arrived at the scene of Plaintiff's December

2008 slip and fall ( made the subject of her Complaint) within five (5) hours after the accident.

**RESPONSE:**


11.     If it is defendants', or any one of them, position that the Plaintiff did not fall down her back steps on December 23, or 24, 2008, or otherwise deliberately fell down these steps, then provide, in detail, all facts which support of this contention   and do so in sufficient detail to support a well drafted affidavit or declaration by the defendants in support of a motion for summary judgment. In addition to providing   all facts supporting this position,  provide the names(s) last known address(es) and last known telephone number of all persons who can and/or will support this position.

**RESPONSE:**


12.     At the time of Plaintiff's December 2008 slip and fall incident, do the defendants contend that any person, or entity, other than them and/or their employees, agents and/or servants was responsible for the maintenance of the premises on which Plaintiff alleges she was injured?  If so, state each and every fact on which defendants base their contention and identify each and every writing that supports that contention.

**RESPONSE:**


9

**13.**   Do defendants think Plaintiff knew or should have known that the area in which Plaintiff fell was not safe to be walked on by the Plaintiff or anyone else?  If affirmative set forth all facts upon which defendants intend to reply upon at trial to support this position.

**RESPONSE:**

**14.**   Identify any previous or subsequent slip and fall incidents of which defendants are aware which occurred in substantially the same manner as the incident complained of in Count One of this lawsuit, or which also occurred at the residential complex where Plaintiff resided during the events described in her Complaint, including a description of all premise liability claims made involving this property over the last 10 years.

**RESPONSE:**

**15.**   Identify any procedures which defendants followed, at and before the time of the occurrence, concerning the inspection, repair, maintenance, and cleaning and/or ice removal of the area where Plaintiff's December 2008 slip and fall injuries occurred.

**RESPONSE:**

**16.**     Identify any warnings, whether verbal or written (such as by a sign or otherwise) which were given to the Plaintiff specifically, and/or to other invitees to the Premises, in general before Plaintiff's' December 2008 slip and fall incident.

**RESPONSE:**

**17.**     If anyone investigated Plaintiff's slip and fall allegation including, but not limited to, medical experts, private investigators or insurance adjusters, state their name(s) and address(es), and state whether such investigation was reduced to writing, and provide the substance of their investigation and findings. If said investigators obtained any signed, recorded, transcribed or oral statement from any individual, identify the person who gave the statement and the present custodian of such statement.

**RESPONSE:**

**18.**     Identify each person interviewed concerning Plaintiff's slip and fall incident. For each such person state the date of the interview; the substance of the interview and if the interview was recorded and/or transcribed.

**RESPONSE:**

**19.** State whether or not the back stairs to Plaintiff apartment was equipped with a video surveillance camera during the date of her December 2008 slip and fall and, if so, whose responsibility it was on the date of the occurrence to monitor the surveillance camera and whether there are still tapes from the date of the occurrence and the week both before and after the occurrence.

**RESPONSE:**

**20.** If defendants know of the existence of any pictures, photographs, plats, visual recorded images, police reports, diagrams or objects relative to Plaintiff's December 2008 slip and fall incident, or the Plaintiff's physical condition, or the scene of the occurrence, identify the substance of such recording and the present custodian of each such item.

**RESPONSE:**

**21.** Do the defendants know of any statement, conversation, comment, testimony or report made by any party to this lawsuit or witness, including the Plaintiff, made at the time of Plaintiff's December 2008 slip and fall incident or following the occurrence, concerning the occurrence or facts relevant to Count One of this case? If your answer is "yes," state the content of such statement, conversation, comment or report, the place where it took place and the custodian of such statement.

**RESPONSE:**

22.    Do the defendants believe that they did everything that they could have done to prevent Plaintiff's injuries? Set forth everything that they did to avoid the accident that occurred. Is there anything defendants wish they wish that they had done differently?

**RESPONSE:**

23.    Identify when each defendant first learned that Plaintiff suffered injuries from a December 2008 fall down her back steps

**RESPONSE:**

24.    Do defendants believe that a reasonable prudent person traveling across the area in question should have been able to maintain his/her balance and avoided the fall?

**RESPONSE:**

25.    With respect to the two corporate defendants: Summerville Court Condominium Association, and, Midtown Properties LLC, state whether they were license or otherwise authorized to do business

13

in the State of Alabama for each of the following years, 2006, 2007, 2008, 2009, and 2010.

**RESPONSE:**

**26.** If the response to interrogatory 24, above, is negative with respect to any of the years referenced therein, state, in detail, why no license was obtained or authorization sought.

**RESPONSE:**

**27.** If any response to Plaintiff's Complaint is a denial based upon disputed facts, then for each such occasion, state defendants' version of the facts as defendants know or believe them to have existed.

**RESPONSE:**

**28.** During the entirety of Plaintiff's tenancy, identify by full name, date, last known address(es), last known telephone number(s) all complaints concerning gate damage to a motor vehicle defendants have received concerning the gate situated at their Upham Street, Mobile Alabama Condominium properties.

**RESPONSE:**

14

**29.**     Identify, by date and circumstances, when each defendant first learned that the Plaintiff desired to relocate to a downstairs apartment unit.

**RESPONSE:**


**30.**     Identify, by unit/apartment  number, all vacant first floor apartment(s)/unit(s) defendant had at their Upham Street, Mobile Alabama  Condominium properties during the inclusive period of December 25, 2008 up to April 14, 2010,

**RESPONSE:**


**31.**     Identify, by date and circumstance, all offers of a first floor apartment unit made to the Plaintiff by defendants, or any one of them.

**RESPONSE:**


**32.**     Please identify the corporate defendants' correct legal entity and identify, stating the date on which such entity was formed, the State of incorporation, the name(s) and address(es) of all officers, directors, general partners, limited partners and all other parties with any interest in their  organization.

**RESPONSE:**

ISHMAEL JAFFREE (JAF 002)
758 St Michael St. Ste 908
Mobile Alabama 36602
251-694-9090 ishjaff@gmail.com

## CERFITICATE OF SERVICE

Above discovery served with the Complaint.